UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NETFLIX, INC.,<br><br>　　　　Movant,<br><br>　v.<br><br>FORTRESS INVESTMENT GROUP LLC,<br><br>　　　　Respondent. | CASE NO. 1:20-mc-00253 (AJN)<br><br>Related to *Uniloc 2017 LLC v. Netflix, Inc.*, No. 8:18-cv-02055-GW-DFM, pending in the United States District Court for the Central District of California |

**RESPONDENT FORTRESS INVESTMENT GROUP LLC'S
OPPOSITION TO NETFLIX, INC.'S MOTION TO COMPEL**

**Table of Contents**

I. Introduction ................................................................................................................. 1

II. Background .................................................................................................................. 2

III. Legal Standard ............................................................................................................. 4

IV. Argument ..................................................................................................................... 6

      A. The Court should deny the motion outright or, in the alternative, stay the motion to compel in view of the pending request to stay the underlying litigation in light of the pending Federal Circuit appeal. .................................................................. 6

      B. Netflix's requests seek irrelevant but highly confidential documents that are not proportional to the needs of the case. ..................................................................... 7

      C. Netflix fails to explain why it cannot obtain requested information from Uniloc 2017, the plaintiff in the underlying litigation. ..................................................... 12

      D. Netflix's document requests regarding Fortress' ownership structure are irrelevant to the underlying patent infringement case and are an unwarranted invasion of Fortress' proprietary business operations. ............................................................ 13

      E. Netflix wrongly asserts that Fortress concedes the relevance of the documents based on *SEVEN Networks, LLC, v. Apple Inc.* ..................................................... 14

V. Conclusion .................................................................................................................. 15

# Table of Authorities

**Cases**

*Am. Eagle Outfitters, Inc. v. Payless Shoesource, Inc.*, No. 07-cv-1675-ERK-VVP, 2009 WL 152712 (E.D.N.Y. Jan. 21, 2009) ................................................................................................. 9

*Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44 (S.D.N.Y. 1996) .................................. 6

*Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998) ....................................................... 5

*Dart Industries Co., Inc. v. Westwood Chemical Co.*, 649 F.2d 646 (9th Cir. 1980) .................. 5

*E.E.O.C. v. Harvey L. Walner & Associates*, 91 F.3d 963 (7th Cir. 1996) .................................. 6

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) ...... 7

*Google LLC v. Fortress Investment Group LLC et al.*, No. 2:20-mc-00003-JRG-RSP, Dkt. 32 (E.D. Tex. April 17, 2020) ................................................................................................. 8

*Gropper v. David Ellis Real Estate, L.P.*, 2014 WL 518234 (S.D.N.Y. Feb. 10, 2014) ............... 6

*Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76 (D. Del. 2009) ........................................ 5

*Heat and Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017 (Fed. Cir. 1986) ...................... 5

*Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016) ........................ 6

*In re Rosuvastatin Calcium Pat. Litig.*, No. 07-cv-807-JJF-LPS, 2009 WL 1651493 (D. Del. June 3, 2009) ................................................................................................................... 13

*In re Six Grand Jury Witnesses*, 979 F.2d 939 (2d Cir. 1992) ..................................................... 6

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012) ............................ 7

Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301 (Fed. Cir. 2009) ......................................... 8

*Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318 (Fed. Cir. 1990) ........................ 11, 12

*Novanta Corp. v. Iradion Laser, Inc.*, Case No. 15-cv-1033-SLR-SRF, 2016 WL 4987110 (D. Del. Sept. 16, 2016) .................................................................................................... 10, 13

*Pegoraro v. Marrero*, 281 F.R.D. 122 (S.D.N.Y. 2012) .............................................................. 9

*Rocky Mountain Medical Management*, Case No. 4:13-cv-064-EJL, 2013 WL 6446704 (D. Id. Dec. 9, 2013) ....................................................................................................................... 6

*Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, Case No. 12-cv-6383-JFB-AKT, 2016 WL 4703656 (E.D.N.Y Sept. 7, 2016) ............................................................................. 11

*Spring Pharm., LLC v. Retrophin, Inc.*, Case No. 18-cv-04553, 2019 WL 3731725 (E.D. Pa. Aug. 8, 2019) ............................................................................................................................. 5

*United States ex rel. Lisitza v. Par Pharm. Companies, Inc.*, 2014 WL 222727 (N.D. Ill. Jan. 21, 2014) ....................................................................................................................................... 6

*Viasat, Inc. v. Space Sys./loral, Inc.*, No. 12-cv-0260-H (WVG), 2013 WL 12061801 (S.D. Cal. Jan. 14, 2013) .......................................................................................................................... 8

*Wollam v. Wright Med. Grp., Inc.*, No. 10-cv-03104-DME-BNB, 2011 WL 1899774 (D. Colo. May 18, 2011) ........................................................................................................................... 9

*XTO Energy, Inc. v. ATD, LLC*, 2016 WL 1730171 (D.N.M. April 1, 2016) .............................. 11

**Statutes**

Fed. R. Civ. Proc. 26 ................................................................................................................ 5, 15

Fed. R. Civ. Proc. 30(b)(6) ............................................................................................................ 1

Fed. R. Civ. Proc. 34 ..................................................................................................................... 5

Fed. R. Civ. Proc. 45 .................................................................................................................. 4, 5

Fed. R. Civ. Proc. 45(d) ...................................................................................................... 5, 6, 15

I.     INTRODUCTION

Netflix's subpoena is an improper attempt to obtain from third-party Fortress Investment Group LLC ("Fortress")—a global asset management firm that manages over $49 billion of credit and real estate, private equity, and other investments, one of which is Uniloc 2017 LLC—discovery that either Netflix can and should obtain (or already has obtained) from Uniloc 2017 or that has no relevance to the underlying case.

Netflix rests its "relevance" claim entirely on the false assertion (based on gross misrepresentations of Uniloc 2017's interrogatory responses) that "Uniloc 2017 itself does not determine which patents to litigate," and that, accordingly, "someone" else must have "directed Uniloc 2017 to purchase the Asserted Patents and litigate them against Netflix" and that this "someone is Fortress." Dkt. 4 at 2. Netflix offers no support for this conspiratorial (and, for the record, false) theory. Nevertheless, it uses it and other *ad hominem* attacks on Fortress to argue that Fortress should be required to search for and collect documents responsive to 70 document requests (nearly all of which seek "All Documents" or "All Communications" about a subject) and to present a Rule 30(b)(6) witness to testify on 71 similarly broad deposition topics.

Fortress properly objected to these discovery requests and when its counsel met and conferred with Netflix's counsel and explained the overbreadth of Netflix's requests, Netflix's counsel said that he would confer with his client and get back to Fortress's counsel. Instead, Netflix immediately filed the instant motion to compel seeking compliance with its requests *as drafted*. In view of the clear lack of relevance of Netflix's requests and Netflix's refusal to narrow its requests in any way, Fortress submits that the appropriate course of action for this Court should be to deny outright Netflix's motion.

In any event, this Court should defer consideration of Netflix's motion to compel until at least the resolution of Uniloc 2017's motion to stay the underlying litigation in the Central District of California. A Northern District of California court in another set of Uniloc 2017 cases recently ruled that Uniloc 2017 did not have Article III standing to assert the patents at issue in those cases and dismissed those cases. Uniloc 2017 disagrees with the N.D. Cal. court's decision

and has appealed it to the Federal Circuit. But the reasoning of the N.D. Cal. decision applies equally to Uniloc 2017's standing to assert the patents it is asserting against Netflix. Accordingly, Uniloc 2017 has moved to stay its case against Netflix. If the underlying case is stayed, there is no basis or purpose for third-party discovery against Fortress to proceed.

## II.     BACKGROUND

Uniloc 2017 LLC filed the underlying litigations against Netflix, Inc. on November 11, 2018 (Case No. 8:18-cv-02055), and December 4, 2018 (Case No. 8:18-cv-02150), asserting U.S. Patent Nos. 8,407,609, 6,584,229, 6,519,005, 6,895,118, and 9,721,273 ("Asserted Patents") in the Central District of California. The cases were consolidated on April 1, 2019. In June 2020, Netflix served the subject subpoena on Fortress, which served objections on July 1, 2020.

Fortress is a global asset management firm with over $49 billion in assets under management. *See* Declaration of David Meisels ("Meisels Decl."), ¶ 3. Fortress, through its affiliated investment management entities, manages investments made by its affiliated entities and funds across a range of credit and real estate, private equity and permanent capital investment strategies on behalf of approximately 1,800 institutional investors worldwide. *Id.* One such investment is in plaintiff Uniloc 2017 LLC. *Id.*

Netflix's subpoena to Fortress contains 70 broad document requests and 71 deposition topics. Netflix claims that its requests are "relevant" based on the assertion that Uniloc 2017 admitted in an interrogatory response that it does not decide which patents to litigate. Dkt. 4 at 2. But the interrogatory that Netflix cites for this proposition does not address this topic whatsoever. Interrogatory No. 2 asks about the existence of valuations for the asserted patents. Uniloc 2017 does not state that valuations do not exist and certainly does not "admit" that "someone else" (let alone Fortress) makes the decisions regarding patent assertions. Rather, Uniloc 2017's interrogatory simply states as follows: "Plaintiff has not performed any non-privileged Valuations of any of the Patents-in-Suit or any of the Related Patents/Applications." Dkt. 5-3 at 3-4. Therefore, rather than citing any relevant evidence to support its allegations,

Netflix's motion is replete with attorney argument in an effort to perpetuate conspiracy theories about Fortress' role in patent litigation. But aggressive hyperbole is not sufficient for Netflix to satisfy its burden for why the discovery it seeks is relevant and not unduly burdensome.

Further, even under Netflix's "relevance" theory, many of Netflix's requests seek documents and information having nothing do with Fortress' Uniloc 2017 investment. Examples of such requests include the following: (1) articles of incorporation (RFP No. 1); (2) identification of all "members, officers, employees and agents" (RFP No. 2); (3) "revenues, expenses, and profits from patent asserting activities since 2013" (RFP No. 7); (4) "all documents relating to [Fortress'] policies, practices and customs concerning patent asserting activities since 2013" (RFP No. 10); (4) "[d]ocuments sufficient to show [Fortress'] financial condition between 2013 and the present, including but not limited to balance sheets, income statements, profit and loss statements, cash flow statements and other financial documents reflecting [Fortress'] revenues, profits and losses" (RFP No. 31); (5) "all documents and communications relating to Softbank Corp.'s decision to invest in [Fortress]" (RFP No. 67); and (6) "[a]ll documents and communications relating to any agreement involving [Fortress'] investment in or ownership of any patent assertion entity and the reasons for any subsequent change or modification in the terms of such agreement" (RFP No. 68). Netflix's motion offers no argument for why these requests are appropriate.

Counsel for Fortress and Netflix conferred for approximately 1.5 hours on July 14, 2020, to discuss the subpoena. *See* Declaration of Jeremiah A. Armstrong ("Armstrong Decl."), ¶ 2. During the call, Netflix was unable to articulate the relevance of the requests and was also unwilling to narrow the requests in any meaningful way. *Id*. Netflix's counsel indicated that he would consult with his client regarding potential ways to narrow the dispute based on suggestions provided by Fortress' counsel during the call. *Id*. However, rather than continuing to confer in good faith, Netflix immediately proceeded to file the present motion to compel on July 16, 2020. *Id*.

During this same period, Uniloc 2017 and Netflix were in the midst of documenting a

3

settlement agreement.  As a result, and at the request of Netflix and Fortress, this Court stayed the motion to compel dispute on July 23, 2020.  Unfortunately, Netflix reneged on the settlement agreement, and Uniloc 2017 moved to enforce the settlement, which the court denied on January 4, 2021. Case No. 8:18-cv-02055-GW-DFM, Dkt. 198.

Meanwhile, since this motion to compel was stayed in July 2020, defendants in other Uniloc 2017 cases asserted that Uniloc 2017 did not have Article III standing to assert particular patents.  On December 22, 2020, Judge Yvonne Gonzalez Rogers in the Northern District of California ruled that Uniloc 2017 lacked standing to bring certain patent infringement suits against Google (the "Google Order") and dismissed all of Uniloc's cases pending in the N.D. Cal. against Google. Armstrong Decl., Ex. 1 (Motion to Stay) at Ex. A (Google Order).  The facts underlying the Google Order and the court's decision to dismiss those actions are applicable to Uniloc 2017's litigation against Netflix.  In other words, U.S. Patent No. 8,407,609 is asserted in the Google litigation and against Netflix.  On December 31, 2020, Uniloc 2017 filed its Notice of Appeal to the Federal Circuit seeking review of the Google Order and related dismissals. Armstrong Decl., Ex. 1 (Motion to Stay) at Ex. B (Notice of Appeal).

Given the far-reaching effects of the Google Order, Uniloc 2017 requested that Netflix stipulate to a stay of Uniloc's 2017 cases against Netflix.  Armstrong Decl., Ex 1 (Motion to Stay).  Netflix did not dispute that the Google Order was applicable to Uniloc 2017's cases against Netflix, but said that it would oppose the stay unless Uniloc 2017 agreed to a number of conditions unrelated to the cases.  *Id*.  Uniloc 2017 refused to agree to Netflix's unreasonable conditions and moved to stay the underlying action on January 14, 2021.  *Id*.

## III.     LEGAL STANDARD

A subpoena to a third party must comply with Rule 45 of the Federal Rules of Civil Procedure or else "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv)

4

subjects a person to undue burden." Rule 45(d)(3)(A).  Further, a court may quash or modify a subpoena if it finds that to grant such discovery would be "unreasonable and oppressive." *Heat and Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1023-24 (Fed. Cir. 1986).  A party who has not moved for a protective order or a motion to quash but otherwise responds to a subpoena in a timely fashion does not waive its objections.  *See Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76, 80 (D. Del. 2009).

Third parties subject to Rule 45 subpoenas are protected by at least the same safeguards set forth in Rules 26 and 34.  While Rule 26 has long required courts to balance the potential hardship of discovery to prevent discovery abuses (*Heat and Control*, 785 F.2d at 1023-24), the 2015 amendment to Rule 26 provided further limits by adding a proportionality requirement:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and *proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Rule 26(b)(1) (emphasis added).

Along with the proportionality element, courts consider the burden on third parties when evaluating the propriety of a subpoena.  "The unwanted burden thrust upon non-parties" is afforded "special weight in evaluating the 'balance of competing needs' in a Rule 45 inquiry." *Spring Pharm., LLC v. Retrophin, Inc.*, Case No. 18-cv-04553, 2019 WL 3731725, at *3-4 (E.D. Pa. Aug. 8, 2019) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)).  A court's "restriction [on discovery] may be broader when a non-party is the target of discovery." *Id*. (quoting *Dart Industries Co., Inc. v. Westwood Chemical Co.*, 649 F.2d 646 (9th Cir. 1980)). "Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party.  Accordingly, '[a] court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation.'" *Id*. at *4 (quoting *Rocky Mountain Medical Management*, Case No. 4:13-cv-064-EJL, 2013 WL 6446704,

at *4 (D. Id. Dec. 9, 2013)).

Rule 45(d) of the Federal Rules of Civil Procedure governs the appropriate scope of a subpoena and states that a subpoena should be quashed or modified where it, *inter alia*, affords an unreasonable period of time to comply, seeks disclosure of privileged matters, subjects the recipient to undue burden or significant expense, or requires the disclosure of a trade secret or other confidential research, development, or commercial information. *See* Rule 45(d)(2)-(3). Moreover, discovery should be limited when it is "sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant, or when the examination is on matters protected by a recognized privilege." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992). Courts routinely explain that using a subpoena to engage in a fishing expedition is improper and that blanket subpoenas are impermissible. *See*, *e.g.*, *Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (collecting cases); *Gropper v. David Ellis Real Estate, L.P.*, 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (collecting cases); *United States ex rel. Lisitza v. Par Pharm. Companies, Inc.*, 2014 WL 222727, at *2 (N.D. Ill. Jan. 21, 2014) ("discovery is not to be used as a fishing expedition.") (quoting *E.E.O.C. v. Harvey L. Walner & Associates*, 91 F.3d 963, 971-972 (7th Cir. 1996)). "Whether a subpoena imposes upon a witness an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (quotation marks and citations omitted).

**IV.    ARGUMENT**

    **A.    The Court should deny the motion outright or, in the alternative, stay the motion to compel in view of the pending request to stay the underlying litigation in light of the pending Federal Circuit appeal.**

Netflix's efforts to proceed with its discovery against Fortress despite the motion to stay the underlying litigation filed by Uniloc 2017 on January 14 indicates that Netflix is intent on using this subpoena against Fortress for an improper purpose. Under Rule 45(d)(1), Netflix "must take reasonable steps to avoid imposing undue burden or expense on" third party Fortress.

6

But Netflix completely ignores that duty by continuing to pursue this subpoena while Uniloc 2017's motion to stay is pending. Netflix's litigation tactics are a waste of both judicial and Fortress' resources because there is no reason why the discovery sought must happen at this juncture. The only dates currently scheduled in the underlying case is a February 4, 2021 hearing on Netflix's motion for summary judgment under 35 U.S.C. § 101 and a February 11, 2021 hearing on Uniloc 2017's motion to stay. There are no deadlines for the close of fact discovery, expert discovery, a pretrial conference, or trial. Accordingly, as explained in the section below, if the Court does not deny the motion outright given the irrelevant requests and the burden on Fortress, this Court should defer consideration of Netflix's motion until the Central District of California court presiding over the underlying case decides Uniloc 2017's motion to stay.

      **B.**    **Netflix's requests seek irrelevant but highly confidential documents that are not proportional to the needs of the case.**

Netflix contends that requests propounded on Fortress are all related to "valuation" and "damages." To begin with, as explained above, Netflix's argument that it must obtain discovery from Fortress on these topics rather than Uniloc hinges on its false assertion that Fortress directs and controls Uniloc 2017's patent assertion decisions and on its disparagement of Uniloc 2017 and Fortress. Again, as explained above, Netflix's claims are demonstrably false and provide no basis to subject Fortress to intrusive and burdensome discovery.

Even putting aside that issue, Netflix fails to articulate how the requested information falls into any of the requisite 15 Georgia-Pacific factors that are fundamental to any patent damages analysis. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970); *see LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 60 n.2 (Fed. Cir. 2012) (identifying the 15 Georgia–Pacific factors as the appropriate methodology to frame the reasonable royalty inquiry). Furthermore, Netflix fails to identify the date of the relevant hypothetical negotiation—a key component of any damages analysis—and how any

information purportedly in Fortress' possession would be relevant to the pertinent hypothetical negotiation time period.

The cases cited by Netflix are inapposite.  First, although *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009), discusses the "hypothetical negotiation" backdrop, the case has no bearing on the present dispute because Fortress is not, and never has been, an owner of the Asserted Patents.  Second, Netflix also incorrectly relies on *Viasat, Inc. v. Space Sys./loral, Inc.*, No. 12-cv-0260-H (WVG), 2013 WL 12061801, at *2 (S.D. Cal. Jan. 14, 2013).  There, the plaintiff patent owner sought to compel documents related to a third party's recent purchase of one of the defendants.  The court agreed with the plaintiff's argument that the third-party purchaser's analysis and valuations of the defendant's business operations, including valuation of the accused satellite manufacturing products, were relevant to the damages inquiry.  However, Netflix's reference to the *Viasat* case is misplaced because the subject valuation concerned the products accused of infringing—not the valuation of the patent that was being asserted, which is the information that Netflix seeks in the present case.

Recently, in another patent infringement case brought by Uniloc 2017, Magistrate Judge Roy S. Payne in the Eastern District of Texas rejected Google's efforts to obtain the same types of information from Fortress that Netflix now seeks.  *See Google LLC v. Fortress Investment Group LLC et al.*, No. 2:20-mc-00003-JRG-RSP, Dkt. 32 (E.D. Tex. April 17, 2020).  The Texas court found that Google's document requests were overbroad and not sufficiently tied to damages issues.  "[Google's] requests go too far though, asking for documents relating to the Respondents' internal analyses and investigations before the patents were purchased—information that bears no relevance to a reasonable royalty under the *Georgia-Pacific* analysis."  Armstrong Decl., Ex. 2 at 5.  Accordingly, the Texas court denied Google's motion to compel.

In view of the same types of irrelevant requests propounded by Netflix, the Court should likewise deny the present motion.

Further, Netflix's document requests go far beyond matters relating to "valuation" and "damages" and seek documents that are unrelated to the underlying litigation. For example, Netflix asks for: "All Documents and Communications relating to any agreement involving Your investment in or ownership of any patent assertion entity and the reasons for any subsequent change or modification in the terms of any such agreement." Dkt. 5-1 at 16 (RFP No. 68). Similarly, Netflix asks for "All Documents and Communications relating to patent assertion strategy involving any of the Uniloc Asserted Patents or any patent portfolio(s) that include any of the Uniloc Asserted Patents." Dkt. 5-1 at 16 (RFP No. 66). And Netflix asks for "All Documents relating to Your policies, practices, and customs concerning patent asserting activities since 2013." Dkt. 5-1 at 13 (RFP No. 10). There is no basis for these requests and, tellingly, Netflix's motion offers none.[1]

Netflix's efforts to improperly wield the subpoena as a means to explore Fortress' business operations are further highlighted by requests that seek documents and information about Fortress' overall business, including "articles of organization" for Fortress itself and any arguably related entity (RFP No. 1), the identities of persons who have membership interest in Fortress and any arguably related entity (RFP No. 2), and the identities of the "present members,

---

[1] These types of requests seeking "all documents and communications" are often rejected by courts, particularly where they are grounded on little more than the requesting party's suspicion that broad discovery may unearth damaging admissions by the opposing party. *See*, *e.g.*, *Pegoraro v. Marrero*, 281 F.R.D. 122, 132 (S.D.N.Y. 2012); *Wollam v. Wright Med. Grp., Inc.*, No. 10-cv-03104-DME-BNB, 2011 WL 1899774, at *2 (D. Colo. May 18, 2011); *Am. Eagle Outfitters, Inc. v. Payless Shoesource, Inc.*, No. 07-cv-1675-ERK-VVP, 2009 WL 152712, at *1 (E.D.N.Y. Jan. 21, 2009) ("The plaintiffs also seek to justify their requests with the argument that by gathering such a broad array of documents they may unearth admissions damaging to the defendant. Requests based on such hope, particularly requests as broad as these, are not reasonably calculated to lead to admissible evidence.").

managers, officers, employees, and agents" of Fortress and any arguably related entity (RFP No. 3).[2]  Dkt. 5-1 at 12.  There is no basis for these requests and, as with many other of its requests, Netflix's motion offers no basis.  Likewise, Netflix asks for "Documents sufficient to show Your revenues, expenses, and profits from patent asserting activities since 2013." Dkt. 5-1 at 13 (RFP No. 9).  But Fortress' financial performance is not relevant to any legitimate issue in this case.

Netflix provides no legitimate rationale for why a voluminous search, collection or production is proportional to the needs of the underlying litigation—even though that is what is required under the law.  *See Novanta*, 2016 WL 4987110, at *4 ("It is Plaintiff's burden to show how discovery related to general requests for incorporation documents, corporate records, and related documents covering all aspects of Iradion's business, is proportional to the needs of the case.").  Rather, Netflix argues that it is entitled to such broad discovery because "someone has performed a business analysis of the patents and directed Uniloc 2017 to purchase the Asserted Patents and litigate them against Netflix. That someone is Fortress. ... Based on Fortress's agreements with Uniloc's related entities, and its well-known practice of using a web of patent assertion entities such as Uniloc 2017 to drive up litigation costs and force operating companies into coercive settlements, Netflix has every reason to believe that Fortress is the controlling entity behind Uniloc's attempts to drive up costs in the Litigation."  With such self-serving language, Netflix has provided nothing but pure speculation to argue that Fortress somehow controls Uniloc 2017 and should therefore be inflicted with abusive discovery.  Netflix fails to articulate how the activities that Netflix alleges are even relevant in a proper damages analysis.

---

[2] Netflix frames its requests in very broad terms by relying on the defined terms "You" and "Your," which Netflix defines as follows: "Fortress Investment Group LLC, Fortress Credit Co LLC, CF DB EZ LLC, CF DB EX 2017 LLC, and/or any of their past or present predecessors, successors, subsidiaries, affiliates, owners, members, officers, directors, employees, agents, representatives, attorneys, divisions, departments, and all other persons or entities acting on their behalf." Dkt. 5-1 at 8.

10

Courts routinely reject the discovery fishing expeditions upon which Netflix now embarks. *See XTO Energy, Inc. v. ATD, LLC*, 2016 WL 1730171, at *12 (D.N.M. April 1, 2016) ("A district court is not . . . 'required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim.'"); *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, Case No. 12-cv-6383-JFB-AKT, 2016 WL 4703656, at *2 (E.D.N.Y Sept. 7, 2016) ("[P]arty seeking discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition."); *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1324-25 (Fed. Cir. 1990) ("[Plaintiff's] argument that the requested information 'somehow relates to its pending California action'" was insufficient to establish relevancy. "The doors of the discovery process may not be so easily opened.").

Moreover, many of the documents that Netflix seeks contain Fortress' highly proprietary and sensitive business information that would harm Fortress if disclosed. *See* Meisels Decl., ¶¶ 4-7. Although a protective order has been entered in the underlying California litigation, a protective order is not a panacea for overbroad discovery requests. Fortress is not a party to the California litigation and has no standing to challenge the disposition of documents produced subject to that protective order. The Federal Circuit has recognized this as a valid concern for non-parties despite the presence of a protective order as set forth in *Micro Motion*:

> [W]e reject Micro Motion's argument that the protective order, entered by the court here, obviates [non-party] K-Flow's objections to discovery. The protective order is not a substitute for establishing relevance or need. … Here, however, information supplied by K-Flow is placed in risk of public disclosure by the very terms of the California protective order. To illustrate, the designation of material as "confidential" by K-Flow would not be controlling. The California court retains authority to decide what materials are properly deemed "confidential" and what part of the trial shall be in camera. It would be divorced from reality to believe that either party here would serve as the champion of its competitor K-Flow either to maintain the confidentiality designation or to limit public disclosure as much as possible during trial. K-Flow would, in fact, lose all control of the situation since

11

> disclosure of its information depends on the action by a court before whom it has no standing. *See Union Carbide Corp. v. Filtrol Corp.*, 278 F. Supp. 553 (C.D. Cal. 1967). Further, the resolution of the damages issue will necessarily disclose substantial information to the litigants. The point, however, is that *a protective order which limits to whom information may be disclosed does not eliminate the requirements of relevance and need for information*.

*Micro Motion*, 894 F.2d at 1325 (emphasis added).

Accordingly, Netflix fails to substantiate the relevance and need for the requested information to the extent necessary to warrant the potential confidentiality disclosure risks inherent in litigation discovery.

**C.      Netflix fails to explain why it cannot obtain requested information from Uniloc 2017, the plaintiff in the underlying litigation.**

For many of the document requests, the information sought is equally available from Uniloc 2017, a party to the litigation. For instance, and putting aside relevance, Netflix asks that Fortress produce Uniloc 2017's articles of organization (RFP No. 1); persons with a membership interest in Uniloc 2017 (RFP No. 2); identification of Uniloc 2017's present members, managers, officers, employees, and agents (RFP No. 3); all agreements entered into between You and Uniloc 2017 (RFP No. 7); and "all Documents relating to the formation, creation, ownership, funding, and operation of Uniloc 2017" (RFP No. 8). Uniloc 2017 already produced materials that fall into these categories. For instance, Uniloc 2017 produced its operating agreement, which details the company's members and officers. (Bates No. UNILOC_0002317-2383), its note purchase and security agreement (Bates No. UNILOC-0002384-2490), and an agreement between Uniloc 2017 and Fortress Credit Co. (Bates No. UNILOC_0002541-2591). Accordingly, Netflix has no basis to burden Fortress with these types of duplicative requests.

Netflix should have to demonstrate good cause for why it needs documents from Fortress aside from those that have already been produced by Uniloc 2017. *See In re Rosuvastatin*

12

*Calcium Pat. Litig.*, Case No. 07-cv-807-JJF-LPS, 2009 WL 1651493, at *1 (D. Del. June 3, 2009) ("Such a showing shall require, at minimum, that Plaintiffs demonstrate that the relevance of documents likely to be identified outweighs the burden on Sandoz of identifying them."); *Novanta Corp. v. Iradion Laser, Inc.*, Case No. 15-cv-1033-SLR-SRF, 2016 WL 4987110, at *4 (D. Del. Sept. 16, 2016) ("Plaintiffs interest in Iradion's research and design documents, which it assumes would show a progression from the non-infringing product in the prior suit to the Accused Products in the pending suit, may be relevant. However, with regard to the need for this discovery and proportionality concerns, no record has been made for the court as to whether such information is lacking in Iradion's document production.").

### D. Netflix's document requests regarding Fortress' ownership structure are irrelevant to the underlying patent infringement case and are an unwarranted invasion of Fortress' proprietary business operations.

Netflix's invasive discovery efforts regarding Fortress' confidential and proprietary business operations is epitomized in RFP Nos. 2 and 3: "Documents sufficient to identify persons with a membership interest in You and/or Uniloc 2017" and "[d]ocuments sufficient to identify all of Your and Uniloc 2017's present members, managers, officers, employees, and agents." Dkt. 5-1 at 12. Netflix's other document requests seek "*all* documents," "*all* agreements," and "*all* communications" concerning an array of subject matter that has no legitimate relevance to outstanding issues in the underlying litigation. Likewise, Netflix's document requests seek the production of email, which serves as an end-run around the discovery practices between the parties in the underlying litigation where emails have not been produced. Under the E-Discovery Order entered in the underlying litigation, email discovery is only allowed after there has been "a good faith determination that email discovery is reasonably likely to result in production of noncumulative discovery that is relevant to any party's claim or defense and proportional to the needs of the case pursuant to Fed. R. Civ. P. 26(b)(1)." Case No. 8:18-cv-02055-GW-DFM, Dkt. 75 at ¶ 7 (July 3, 2019). Netflix has made no such showing

13

here—nor attempted to do so in the underlying litigation as neither Uniloc 2017 nor Netflix has served any requests for the production of emails. Instead, Netflix demands that Fortress search through potentially thousands of documents that Netflix purports fall within the scope of its incredibly broad 70 document requests that Fortress must closely review before a potential production. In reality, Netflix's document requests are designed to generate significant expense as it tries to acquire irrelevant information regarding Fortress' proprietary business operations.

Given that Fortress is a global investment manager with tens of billions of dollars in assets under management on behalf of over one thousand institutional clients and private investors, Netflix's discovery would require Fortress to provide highly confidential information about Fortress' fund structure, ownership classes, investment decision-making process, and the identities of limited partner investors who participate in the Uniloc 2017 investment. *See* Meisels Decl., ¶¶ 4-7. This information is not germane to any issues in Uniloc 2017's *patent infringement* litigation against Netflix. Netflix's request is akin to Uniloc 2017 asking Netflix to identify each of its own shareholders, creditors, investors, option holders, and to provide financial and legal data regarding each person or entity's holdings. If Netflix were asked to reveal such information, it would certainly (and appropriately) object and refuse to do so.

Likewise, in this instance, revealing such information would improperly compromise Fortress' confidentiality obligations to third party investors, and such discovery is not proportional to the needs of the underlying litigation. *See* Meisels Decl., ¶¶ 4-7. Thus, Netflix's pursuit of these documents should be halted because it has no legitimate basis for this highly proprietary information.

E. **Netflix wrongly asserts that Fortress concedes the relevance of the documents based on *SEVEN Networks, LLC, v. Apple Inc.***

Netflix wrongly equates the categories of documents that were produced in *SEVEN Networks, LLC v. Apple Inc.*, No. 2:19-cv-00115-JRG (E.D. Tex.) with what Netflix now seeks from Fortress. Notably, most categories of documents that Netflix cites as having been produced in the *SEVEN Networks* litigation are those that either have been already produced by Uniloc

2017 or should be available from Uniloc 2017. Likewise, the *SEVEN Networks* categories cited by Netflix are far narrower than the 70 document requests that Netflix has propounded on Fortress.

Ultimately, the fact that Fortress produced some documents in response to a subpoena in a completely different litigation involving entirely different entities and asserted patents does not establish that Netflix's discovery requests in the present case are proper. The merits of Netflix's discovery requests—standing apart from documents that may have been produced in an unrelated matter—must be the central inquiry. Here, Netflix has made no effort to articulate how its overbroad discovery requests are proportional to the needs of the case, as required by Rule 26(b). As a result, Netflix has failed to take "reasonable steps to avoid imposing undue burden or expense on" Fortress in contravention of Rule 45(d)(1).

## V.   CONCLUSION

For the foregoing reasons, Netflix's motion to compel should be denied.

Dated:  January 22, 2021

Respectfully submitted,

DUNNEGAN & SCILEPPI LLC

By   /s/ *William Dunnegan*
William Dunnegan (WD9316)
wd@dunnegan.com
Richard Weiss (RW4039)
rw@dunnegan.com
437 Madison Avenue, 24th Floor
New York, New York 10022
T: 212-332-8300

M. Elizabeth Day (*pro hac vice*)
eday@feinday.com
FEINBERG DAY KRAMER ALBERTI
LIM TONKOVICH & BELLOLI LLP
577 Airport Blvd., Suite 250
Burlingame, California 94010
T: 650-825-4300

Attorneys for Respondent
Fortress Investment Group LLC